1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BENJAMIN ESPINOSA,

                       Plaintiff,

   v.

FILSON, *et al.,*

                    Defendants.

3:18-cv-00298-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

       This case involves a civil rights action filed by Plaintiff Benjamin Espinosa ("Espinosa") against Defendants James Dzurenda, Timothy Filson, Scott Mattinson, Dr. Borino, Michele Ewing, Gail Holmes, Associate Warden Gittere, William Reubardt, Gloria Carpenter, Romeo Aranas, and two John Does (collectively referred to as "Defendants").[2] (ECF Nos. 47 & 79.)   Currently pending before the court is Defendants' motion for dismissal of Count V of Espinosa's first amended complaint ("FAC"). (ECF Nos. 82.) Espinosa filed no opposition to the motion.   For the reasons stated below, the Court recommends Defendants' motion for dismissal of Count V (ECF No. 82) be granted.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

       Espinosa is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at the Ely State Prison ("ESP") in Ely, Nevada. (*See* ECF No. 76.)   Proceeding *pro se*, Espinosa filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging six counts and seeking declaratory, injunctive, and monetary relief against multiple defendants for events occurring while Espinosa was incarcerated at ESP. (ECF No. 47 at 21, 23-24.)

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Espinosa also named Michelle Clay and Sandoval as defendants in his amended complaint, (ECF No. 47), but subsequently voluntarily dismissed his claims against those defendants.  (*See* ECF Nos. 95, 101.)

The alleged events giving rise to Espinosa's case are as follows: Espinosa became depressed and suicidal following a series of tragic events occurring around the time of his incarceration and shortly thereafter. (ECF No. 47 at 7.)  While incarcerated at Lovelock Correctional Center, Espinosa began mental health treatment and was prescribed anti-depressants beginning in 2014. (*Id.* at 7-8.)  Prior to moving to ESP, Espinosa discontinued taking the anti-depressants because he believed he was no longer depressed. (*Id.* at 8.)

Upon arrival at ESP, Espinosa's depression symptoms worsened, and he was placed on suicide watch for a time, and then was moved to a mental health unit. (*Id.* at 9.) Espinosa made several requests to obtain a new anti-depressant prescription from ESP medical staff, all of which were denied. (*Id.*)  Espinosa was eventually removed from the mental health unit and program, which escalated his depression and irritability symptoms further. (*Id.* at 10.)  Eventually, Espinosa made comments to ESP staff that he feared he might kill himself, which got him placed into the infirmary under mental health observation. (*Id.*)

While in the infirmary, Espinosa attempted suicide by taking all his high blood pressure medication and an entire bottle of ibuprofen, which was followed by a "mental breakdown." (*Id.* at 10-11.)  Following his attempted suicide, Espinosa was ordered to be restrained by the ESP medical staff, placed in four-point restraints, naked, spread-eagle, face-down, strapped by the wrists and ankles, for nearly four hours. (*Id.* at 11.)  After being restrained, Espinosa was placed into suicide isolation for a period of five days, into mental health observation for an additional three days, and then was returned into the general population. (*Id.* at 12-13.)

Espinosa continued to have depressive symptoms, including irritability, trouble sleeping, and emotional outbursts, and requested placement into administrative segregation, which was denied. (*Id.* at 13.)  Espinosa slammed his head against a wall out of frustration, and a nearby nurse said she would make sure he was moved to

administrative segregation. (*Id.*)  Espinosa alleges after spending a year at ESP, making multiple requests to have his anti-depressant prescription renewed and to receive treatment for his depression, making multiple mental health visits, and attempting suicide, he has still not received necessary medical treatment. (*Id.* at 13-14.)

In Count V, Espinosa alleges Defendants Dzurenda and Aranas violated Nevada Revised Statutes ("NRS") §§ 433.514, 433.5486, 433.549, 433.5493, and 433.484 (collectively referred to as "Chapter 433"), because they hired, employed and/or placed unqualified and unlicensed psychiatrists and psychologists in mental health treatment positions. (ECF No. 47 at 21.)  In addition to the facts alleged in the complaint, Espinosa asserts the Chapter 433 violations based on the following allegations:

> Defendant DZURENDA, ARANAS, and FILSON have hired, employed, and/or placed unqualified and unlicensed psychiatrist and psychologist in positions over plaintiff's psychological treatment and diagnosis.
>
> Defendants misuse of mechanical restraints on plaintiff who was non-violent and placed no disturbance or threat to others and displayed 'forward thinking' and signs of awareness.
>
> The use of restraints and isolation strip cell as punitive without a Notice of charges, hearing, or sentencing.

*See* ECF No. 47 at 21.

At screening, the court determined Espinosa could proceed with those aspects of Count V related to allegations under Chapter 433. (ECF No. 46 at 13.)  This chapter deals with mental health and appeared to outline the duties of the State of Nevada's Division of Public and Behavioral Health ("DPBH").   At screening, the court noted the chapter appeared to establish "consumer" rights. NRS §§ 433.003(2); 433.534.  Although it was unclear to the court whether Chapter 433 applied to incarcerated persons housed at NDOC facilities, or whether the chapter gave individuals a private right of action to sue, Count V was permitted to proceed to allow the parties to file appropriate motions arguing the applicability of Chapter 433 to this case. (ECF No. 46 at 13.)

1        On October 17, 2019, Defendants filed a partial motion to dismiss Count V asserting

2  Espinosa cannot prove any set of facts establishing he is entitled to the protections

3  articulated in Chapter 433, and as such Espinosa fails to state a claim upon which relief

4  can be granted. (ECF No. 82.)  Espinosa was given notice of the motion pursuant to the

5  requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,*

6  154 F.3d 942 (9th Cir. 1988) (ECF No. 84).  In addition, the court *sua sponte* granted

7  Espinosa an extension of time to November 20, 2019 to file an opposition (ECF No. 92).

8  Espinosa did not file an opposition to Defendants' motion to dismiss Count V.

9  **II.    LEGAL STANDARD**

10        Dismissal of a complaint for failure to state a claim upon which relief may be

11  granted is provided for in Federal Rule of Civil Procedure 12(b)(6).  The ruling is a

12  question of law. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).

13  The court is to grant dismissal when the complaint fails to "state a claim for relief that is

14  plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or fails to

15  articulate a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015).

16  When analyzing a motion under Rule 12(b)(6), courts accept as true all well-pled factual

17  allegations, set aside legal conclusions, and verify the complaint states a plausible claim

18  for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  While detailed factual allegations

19  are not necessary, the complaint must offer more than "a formulaic recitation of the

20  elements of a cause of action," *Twombly*, 550 U.S. at 555, and include sufficient facts "to

21  give fair notice and to enable the opposing party to defend itself effectively". *Starr v. Baca*,

22  652 F.3d 1202, 1216 (9th Cir. 2011).  In conducting the dismissal analysis, the complaint

23  is construed in a light most favorable to the plaintiff. *Chubb Custom Ins. Co. v. Space*

24  *Sys./Loral Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).  Moreover, the court takes particular

25  care when reviewing the pleadings of a *pro se* party, for a more forgiving standard applies

26  to litigants not represented by counsel. *Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir.

27  2010).

28

III.    **DISCUSSION**

A.    **Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes". *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

B.    **Count V**

Defendants argue Count V should be dismissed because Espinosa has no rights under Chapter 433 since NDOC is not a part of, nor subject to, the provisions of this chapter.  Additionally, Defendants assert there is no private cause of action against NDOC in Chapter 433, and on that basis, Espinosa fails to state a claim upon which relief may be granted. (ECF No. 82 at 4-11.)

Under Nevada law, when interpreting a statute, the court must first look to the statute's plain language. *Salas v. Allstate Rent-A-Car, Inc.,* 14 P.3d 511, 513-14 (Nev. 2000.)  Whenever possible, "[s]tatutes should be given their plain meaning and must be construed as a whole and not read in a way that would render words or phrases superfluous or make a provision nugatory." *Mangarella v. State,* 17 P.3d 989,991 (Nev. 2001) (internal quotes omitted).  To be considered ambiguous, a statute must be capable

of two or more reasonable but inconsistent interpretations. *Gallagher v. City of Las Vegas*, 959 P.2d 519, 521 (Nev. 1998).

Title 39 of the NRS governs mental health. Chapter 433 contains the general provisions relating to mental health and outlines the duties of the Nevada DPBH, the Commission on Behavioral Health ("Commission"), and regional behavioral health policy boards. *See generally* NRS 433.233 through 433.4295, *et seq.* The chapter also includes statutory provisions relating to consumers of mental health services within Nevada. *See* NRS §§ 433.431 through 433.544, et seq. Specifically, Chapter 433 includes a consumer's bill of rights (NRS §§ 433.56-433.536, et seq.) and statutory provisions governing the use of restraints and interventions by certain mental health providers. NRS §§ 433.545 through 433.551, et seq. The Nevada Legislature declared its legislative intent when enacting Chapter 433. NRS 433.003. The Legislature's stated purpose of the statutory scheme is:

> 1. To eliminate the forfeiture of any civil and legal rights of any person and the imposition of any legal disability on any person, based on an allegation of mental illness, by any method other than a separate judicial proceeding resulting in a determination of incapacity, wherein the civil and legal rights forfeited and the legal disabilities imposed are specifically stated; and

> 2. To charge the Division of Public and Behavioral Health, and the Division of Child and Family Services, of the Department with recognizing their duty to act in the best interests of their respective consumers by placing them in the least restrictive environment.

NRS 433.003.

Moreover, the Legislature adopted numerous specific definitions providing guidance on who was protected by and who had authority under this statutory scheme. The authority granted under this statutory scheme is limited specifically to: (1) the Nevada Department of Health and Human Services[3]; (2) the Nevada DPBH[4]; (3) the

---

[3] *See* NRS 433.064.
[4] *See* NRS 433.084.

1    Commission[5]; (4) the DPBH Administrator[6]; and (5) the Administrative officers of

2    specified state or nonstate mental health centers designated by the Administrator.[7]

3    Accordingly, because NDOC is not specifically enumerated within the statutory provisions

4    of Chapter 433, the court finds NDOC is not subject to the provisions of Chapter 433.

5        While NDOC has an obligation to provide for the health, safety, and welfare of

6    Espinosa, it is not a mental health center as defined by statute. NRS 433.144 specifically

7    defines a mental health center as "any of the state comprehensive mental health centers,

8    including rural health clinics." Likewise, Espinosa is not a consumer as defined by statute.

9    NRS 433.554(5)(b) defines a "consumer" as:

10       any person who seeks, on the person's own or others' initiative, and can
         benefit from, care, treatment and training in a public or private institution or
11       facility offering mental health services, or from treatment to competency in a
         public or private institution or facility offering mental health services. The
12       term includes a consumer of the Division of Child and Family Services of the
13       Department.

14   NRS 433.554(5)(b). Moreover, NRS 433.233 defines which of the DPBH Facilities are

15   specifically subject to the statutory scheme. Those facilities include: (1) Northern Nevada

16   Adult Mental Health Services; (2) Southern Nevada Adult Mental Health Services; (3)

17   Rural clinics; and (4) Lakes Crossing Center. Notably missing from these definitions are

18   any NDOC facilities. Currently, Espinosa is incarcerated at ESP, a correctional facility

19   under the purview of NDOC. (ECF No. 76.)

20       Accordingly, the court finds that because NDOC is not a mental health care center

21   subject to the provisions of Chapter 433, Espinosa cannot be a "consumer" subject to the

22   protections provided by Chapter 433 because he is not receiving mental health services

23   from a specified Nevada DPBH facility. Moreover, since NDOC is not an enumerated

24   Division of the Nevada Department of Health and Human Services, neither NDOC nor its

25   employees could have violated rights that do not exist under the statutory scheme

26

27   _____

     [5] *See* NRS 433.047.
     [6] *See* NRS 433.024.
28   [7] *See* NRS 433.014.

established by Chapter 433.  Therefore, Espinosa cannot prove any set of facts which would allow him to proceed under Count V of the FAC.

Furthermore, Chapter 433 does not create a private cause of action.  The statutory scheme establishes procedures for violations of a consumer's rights under Chapter 433 by filing of a complaint with the Commission.  Specifically, NRS 433.534 allows the Commission to receive reports and investigate allegations made against a facility covered by Chapter 433.  The Commission is granted authority to resolve disputes, to act on the consumer's behalf to obtain remedies for an apparent violation, and to safeguard the rights of otherwise eligible consumers. NRS 433.534.

The Legislature, through Chapter 433, also granted the Commission authority to hold public hearings pursuant to NRS 241.030 to consider the character, alleged misconduct or professional competence of someone laboring under this statutory scheme, primarily those psychiatrists, psychologists, social workers or others working for DPBH.  The overall statutory scheme enacted by the Nevada Legislature in Chapter 433 allows DPBH to resolve issues arising out of alleged violations and/or allows the matter to be forwarded to the appropriate law enforcement agency for investigation and possible criminal prosecution. *See* NRS 433.554.  As such, there is no private cause of action for an alleged violation of Chapter 433.

Accordingly, since NDOC is not a public or private institution or facility offering mental health services as provided under Chapter 433 and there is no private cause of action for an alleged Chapter 433 violation, Espinosa's Count V allegations must be dismissed.

## IV.   CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends defendants' motion to dismiss Count V (ECF No. 82) be granted.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

1   Practice, the parties may file specific written objections to this Report and
2   Recommendation within fourteen days of receipt.  These objections should be entitled
3   "Objections to Magistrate Judge's Report and Recommendation" and should be
4   accompanied by points and authorities for consideration by the District Court.

5       2.    This Report and Recommendation is not an appealable order and any notice
6   of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District
7   Court's judgment.

8   **V.    RECOMMENDATION**

9        **IT IS THEREFORE RECOMMENDED** defendants' motion to dismiss Count V
10  (ECF No. 82) be **GRANTED**.

11  **DATED**: March 4, 2020.

13  **UNITED STATES MAGISTRATE JUDGE**