UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BENJAMIN ESPINOSA, | 3:18-cv-00298-MMD-CLB |
| Plaintiff, | |
| v. | **ORDER** |
| FILSON, et al., | |
| Defendants. | |

Before the court is Plaintiff Benjamin Espinosa's ("Espinosa") motion to compel discovery from Defendants Romeo Aranas, Gloria Carpenter, James Dzurenda, Michele Ewing, Gail Holmes, Scott Mattinson, Noreen Borino, and William Reubart (collectively "Defendants").[1] (ECF No. 97), which Defendants opposed. (ECF No. 99.) Having considered all the above, the motion is granted, in part and denied, in part as stated below.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Espinosa is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at the Ely State Prison ("ESP") in Ely, Nevada. (*See* ECF No. 76.) Proceeding *pro se*, Espinosa filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging six counts and seeking declaratory, injunctive, and monetary relief against multiple defendants for events occurring while Espinosa was incarcerated at ESP. (ECF No. 47 at 21, 23-24.)

The alleged events giving rise to Espinosa's case are as follows: Espinosa became depressed and suicidal following a series of tragic events occurring around the time of his incarceration and shortly thereafter. (ECF No. 47 at 7.)  While incarcerated at

---

[1]  As of March 11, 2020, Defendant Borino has not been served as a party in this case. (*See* ECF No. 104.)

Lovelock Correctional Center, Espinosa began mental health treatment and was prescribed anti-depressants beginning in 2014. (*Id.* at 7-8.) Prior to moving to ESP, Espinosa discontinued taking the anti-depressants because he believed he was no longer depressed. (*Id.* at 8.)

Upon arrival at ESP, Espinosa's depression symptoms worsened, and he was placed on suicide watch for a time, and then was moved to a mental health unit. (*Id.* at 9.) Espinosa made several requests to obtain a new anti-depressant prescription from ESP medical staff, all of which were denied. (*Id.*) Espinosa was eventually removed from the mental health unit and program, which escalated his depression and irritability symptoms further. (*Id.* at 10.) Eventually, Espinosa made comments to ESP staff that he feared he might kill himself, which got him placed into the infirmary under mental health observation. (*Id.*)

While in the infirmary, Espinosa attempted suicide by taking all his high blood pressure medication and an entire bottle of ibuprofen, which was followed by a "mental breakdown." (*Id.* at 10-11.) Following his attempted suicide, Espinosa was ordered to be restrained by the ESP medical staff, placed in four-point restraints, strapped naked, spread-eagle, face-down, by the wrists and ankles, for nearly four hours. (*Id.* at 11.) After being restrained, Espinosa was placed into suicide isolation for a period of five days, into mental health observation for an additional three days, and then was returned into the general population. (*Id.* at 12-13.)

Espinosa continued to have depressive symptoms, including irritability, trouble sleeping, and emotional outbursts, and requested placement into administrative segregation, which was denied. (*Id.* at 13.) Espinosa slammed his head against a wall out of frustration, and a nearby nurse said she would make sure he was moved to administrative segregation. (*Id.*) Espinosa alleges after spending a year at ESP, making multiple requests to have his anti-depressant prescription renewed and to receive treatment for his depression, making multiple mental health visits, and attempting suicide, he has still not received necessary medical treatment. (*Id.* at 13-14.)

On July 24, 2018, the court entered a screening order on Espinosa's initial complaint (ECF No. 4), which allowed an Eighth Amendment conditions of confinement claim to proceed against Defendants Ewing, Holmes, and Borino, and, an Eighth Amendment deliberate indifference to serious medical needs claim to proceed against Defendants Borino, Clay, Ewing, and Holmes. (*See* ECF No. 3 at 9-11.)

On October 23, 2018, Espinosa filed a motion for leave to amend complaint. (ECF No. 25.) Defendants filed a non-opposition on January 11, 2019, instead requesting the First Amended Complaint ("FAC") be rescreened. (ECF No. 44.) The FAC asserts six causes of action, seeking declaratory and injunctive relief and monetary damages. (ECF No. 47.) The Court re-screened the FAC on May 6, 2019 (ECF No. 46), and permitted Espinosa to proceed with the following: (1) Eighth Amendment conditions of confinement claim against Defendants Ewing, Holmes, Borino, Mattinson, Reubart, Carpenter, Aranas, and John Doe; (2) Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Borino, Clay, Ewing, Holmes, Filson, Mattinson, Sandoval, Carpenter, Aranas, and Reubart; (3) Nevada Constitution Article I, § 6 violations against Defendants Ewing, Holmes, Borino, Mattinson, Reubart, Carpenter, Aranas, Clay, Filson, Sandoval, and John Doe; and (4) NRS Chapter 433 violations against Defendants Dzurenda, Aranas, and Filson.[2] (*Id.*)

The court entered the discovery scheduling order on July 29, 2019, which required discovery to be completed by October 28, 2019, dispositive motions to be filed by November 27, 2019, and a proposed joint pretrial order due by December 27, 2019. (ECF No. 70.) Both Espinosa and Defendants filed motions to extend discovery on October 7, 2019. (ECF Nos. 83, 86.) The court granted Defendants' and Espinosa's motions to extend discovery (ECF Nos. 83, 86), with discovery due December 30, 2019, dispositive motions due January 29, 2020, and a joint pretrial order due February 28, 2020. (ECF No. 92.)

---

[2] The claim related to NRS Chapter 433 violations has since been dismissed. (*See* ECF Nos. 103, 105.)

3

Presently before the court is a motion related to a discovery dispute between Espinosa and Defendants. (ECF Nos. 97, 99.) Specifically, on July 30, 2019, Espinosa mailed Defendants a request for production of documents ("RFPD"). (ECF No. 97 at 1.) Espinosa received Defendants' response to the RFPD on or about September 29, 2019. (*Id.*) On October 8, 2019, Espinosa sent a "meet and confer" letter pursuant to LR 26(f)(1) to Defendants to resolve discovery issues, to which Defendants responded on November 29, 2019. (*Id.* at 1-2.) The parties could not informally resolve their dispute, and Espinosa filed the current motion to compel.

## II.     LEGAL STANDARDS

"[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is to be construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

When a party fails to provide discovery and the parties' attempts to resolve the dispute without Court intervention are unsuccessful, the opposing party may seek an order compelling that discovery. Fed. R. Civ. P. 37(a). The party seeking to avoid discovery bears the burden of showing why that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative

arguments. *See, e.g., F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 552 (D. Nev. 2013). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

## III.  DISCUSSION

Espinosa's motion argues Defendants should be compelled to provide the following items of discovery, which he claims were not adequately responded to by Defendants:

| Request for Discovery No. | Interrogatory |
|---|---|
| 1 | Espinosa's medical/mental health records in its entirety, including, but not limited to reports, logs, orders, classifications, notes, restriction orders, and hearing records, documents, notices, etc. |
| 5 | Recorded video on December 14, 2017 approximately at 4:30-9:30 p.m. at ESP, Unit 9, Cell 17 or 18, of restraints used on Espinosa. |
| 9 | All documents associated with Grievance No. 2006-30-62921, including, but not limited to, outcomes, reports, investigative documents, findings, reports and documents from Inspector General's ("IG") office regarding their investigation into allegations made within said grievance. |
| 10 | All documents and information setting forth the substantial standards and criteria used within the psychological community concerning depression, malingering, and suicidal ideation/attempt. |
| 12 | Produce DSM-V test, or copy thereof, that was taken/given to Espinosa by Defendant Ewing at ESP between September 1, 2017 and December 31, 2017, including, but not limited to, any and all documents relating to such, as well as any examination notes of results, responses, scoring results with explanation of scoring techniques. |
| 15 | Any and all documents, notes, evaluation results, etc. concerning psychological evaluation done at High Desert State Prison ("HDSP") on or about September 7, 2018. |

(*See* ECF No. 97). Espinosa asserts several broad arguments and factual contentions to support his motion. However, more specifically, Espinosa argues Defendants should be required to produce the discovery he has identified because: (1) the discovery

5

requests relevant information; and (2) his discovery requests relate directly to Espinosa's Eighth Amendment deliberate indifference to medical needs claim. (ECF No. 97.)

In response, Defendants argue the motion should be denied in its entirety. First, Defendants assert Espinosa cannot have possession of his medical records in his cell pursuant to administrative regulation ("AR") 639. (ECF No. 99 at 2-3.) Second, Defendants oppose Espinosa's request to compel discovery of the September 2017 video because that video, to the best of Defendants' knowledge, is nonexistent. (*Id.* at 3-4.) Third, Defendants argue Espinosa's request for the IG's documents related to Grievance No. 2006-30-62921 is confidential information pursuant to the provisions of AR 457 and as such cannot be produced in discovery. (*Id.* at 4.) Finally, Defendants argue Espinosa's request for all documents and information setting forth standards and criteria used in the psychological community exceeds the scope of discovery and Defendants have no obligation to do research on Espinosa's behalf. (*Id.* at 4-5.)

A.   Espinosa's Medical Records

Three of the six items requested by Espinosa are generally related to Espinosa's medical records. Specifically, Espinosa requests (1) "Plaintiff's medical/mental health records in its entirety, including but not limited to reports, logs, orders, classifications, notes, restriction orders, and hearing records, documents, notices, etc." (*See* ECF No. 97 at 3); (2) Defendants "produce test (DSM-V), or copy thereof, that was taken/given to [P]laintiff by Def. Ewing at [ESP] between the time of September 1, 2017 to December 31, 2017; including but not limited to, any and all documents relating to such, as well as, any examination notes of results, responses, scoring results with explanation of scoring techniques." (*Id.* at 13-15); and, (3) "[a]ny and all documents, notes, evaluation results, etc. concerning psychological evaluation done at HDSP on or about September 7, 2018." (*Id.* at 15-17.)

Defendants' opposition generally objects to Espinosa's request for various reasons not to give Espinosa his medical/mental health records. (*See* ECF No. 99 at 2-3.) The court finds most objections made by Defendants improper. Whether Espinosa

1    can get his medical records or review them in their entirety or not from the institution is
2    less than clear.  Defendants claim Espinosa's request to review or obtain his medical
3    records in their entirety is irrelevant and disproportionate are false. (*See* ECF No. 99-4 at
4    2-3.)  Espinosa's claims in the instant case directly relate to his mental health and
5    medical care received while incarcerated.  Records for a single inmate for the period
6    from the time of his incarceration through the date of the incident in question are not
7    disproportionate.

8    Defendants' opposition relies on AR 639, which governs NDOC medical records.
9    (*See* ECF No. 99-3.)   Specifically, Defendants assert for prison safety and security
10   reasons, inmates are generally prohibited from possessing their medical records in their
11   cells. (ECF No. 99 at 2; *see also* AR 639.03.1.)  Defendants argue Espinosa seeks to
12   compel the production of medical records for his possession, which is prohibited by
13   prison regulations.

14   AR 639 authorizes inmates to review their medical records, including their
15   psychiatric/psychological medical records, "under the direct supervision of medical staff"
16   and are generally permitted to review their medical records "once per calendar year" and
17   restricts the inmate to "one hour to review the medical record" and that an inmate
18   needing additional time for review is permitted to request an additional review at a date
19   and time that is convenient and does not conflict with staff workload priorities.  (*See* ECF
20   No. 99-3 at 5; *see also* AR 639.03.2, 639.03.4(A), 639.03.4(A)(b).)   Additionally, AR
21   639.02.8 creates an exception from the general restriction from inmates directly
22   receiving copies of the health record "when an inmate is personally involved in a lawsuit
23   directly involving medical issues that would require the use of his/her medical records, as
24   verified by the Office of the Attorney General." (*Id.* at 3-4.)  Defendants acknowledge the
25   exception, but argue "while this provision addresses the release of medical records to
26   the inmate, it does not address or authorize subsequent in-cell or on-yard possession of
27   the records… [and] does not proscribe a manner or method in which such a release
28   must occur." (*See* ECF No. 99 at 2, n. 1.)

7

While the court recognizes NDOC's need to ensure the safety and security of the prisons, it is concerned that the apparent blanket prohibition in AR 639 from allowing inmates to only receive copies of the medical records, but to maintain those copies in their cells, may not comply with the Health Insurance Portability and Accountability Act ("HIPAA") regarding individual inmate access to their personal medical records. Specifically, the court cannot find that a blanket denial is permitted by 45 C.F.R. § 164.524(a)(2)(ii).  Further, nothing in 45 C.F.R. § 164.524(c)(3)(i) authorizes a "covered entity" to limit an individual's access to one hour to review their medical records.  As such, the court orders the Defendant to submit supplemental briefing detailing how the provisions of AR 639 comply with the HIPAA requirements contained in 45 C.F.R. § 164.524.  Defendants shall have 14 days from the date of this order to file a supplement brief as stated in this order. Espinosa shall have 14 days to file a response to Defendant's supplemental brief on these issues. Upon receipt of these briefs, the court will hold its ruling on whether Espinosa is entitled to receive copies of his medical records, which he can maintain in his cell, in abeyance.

In the meantime, however, Defendants shall make all of Espinosa's medical records available to him to review under appropriate supervision for a minimum of four hours on or before **Friday, May 8, 2020**. Espinosa shall be permitted to take notes related to the items contained in these records and to tab those records that he believes should be used for either exhibits to motions or as trial exhibits.

B.     Video Evidence

Espinosa requests "[r]ecorded video on December 14th, 2017 approximately at 4:30-9:30 p.m. at Ely State Prison Unit 9 Cell 17 or 18, of restraints used on Plaintiff." (*See* ECF No. 97 at 7-8.)  Defendants' opposition claims "no video of this incident exists to their knowledge." (*See* ECF No. 99 at 3-4.)  The court finds because no video of the incident exists, Espinosa's motion to compel request is denied.

### C. Inspector General's Documents

Espinosa requests "[a]ll documents associated with Grievance No. 200630-62921 including but not limited to outcomes, reports, investigative documents, findings, reports and documents from the Inspector General's office regarding their investigation into allegations made within said grievance." (*See* ECF No. 97 at 9-11.) Defendants argue the documentation associated with an Inspector General's investigation are privileged and confidential pursuant to AR 457.06.1. (*See* ECF No 99 at 4.) Defendants assert because the IG is "an independent authority," Defendants are not privy to the IG's investigative documents, and Espinosa is seeking "privileged, confidential material that is not in [Defendants'] possession or control." (*Id.*; AR 457.01.2.)

Privileged information is not discoverable. Fed. R. Civ. P. 26(b)(1). In a civil rights case brought under § 1983, questions of privilege are resolved by federal law. *NLRB v. N. Bay Plumbing, Inc.,* 102 F.3d 1005, 1009 (9th Cir. 1996). As a result, state law, including state regulations and administrative codes, does not control the applicability of privilege here. *Hooks v. Bannister,* 2014 WL 6772989, at *6 (D. Nev. Dec. 2, 2014). This does not mean that federal courts can just ignore state privilege doctrine, however. *Cross v. Jaeger,* 3:13–cv–00433–MMD–WGC, 2015 WL 1412845, at *4 (D. Nev. Mar. 27, 2015) ("federal courts generally should give some weight to privacy rights that are protected by state constitutions and state statutes"). Strong policy considerations underlie this choice of law, as other courts have explained:

> It ... would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Walker v. No. Las Vegas Police Dept.,* 2:14-cv-01475-JAD-NJK, 2015 WL 8328263, at *2 (D. Nev. Dec. 8, 2015) (quoting *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D. Cal. 1987)). As a result, while the court may give some weight to the State confidentiality

9

interests contained in AR 457, they do not *ipso facto* control the determination of the applicability of privilege in this case. *Cross,* 2015 WL 1412845, at *4.

In contrast to many state law privileges, "[f]ederal law governing privilege has not been codified." *Hooks,* 2014 WL 6772989, at *6.  Rather, privileges have developed at common law. *Id.* (citing Fed. R. Evid. 501).  Federal courts recognize a qualified privilege for official information, into which courts incorporate the confidentiality interests embodied in some state law privileges. *Id.* (integrating confidentiality interests reflected in state administrative regulations into official information privilege analysis). For example, "[p]ersonnel files and complaints made against government employees have been considered official information." *Pinder v. Baker,* 3:13-cv-00572-MMD-WGC, 2015 WL 540431, at *2 (D. Nev. Feb. 10, 2015) (citing *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033 (9th Cir.1990)).  However, the "official information privilege" is a qualified privilege, which must be formally asserted and delineated in order to be raised properly. *Santos v. Baca,* 2:11-cv-01251-KJD-NJK, 2015 WL 7307054, at *2 (D. Nev. Nov. 17, 2015).  The party invoking this privilege must make a substantial threshold showing, after which, courts must engage in a balancing analysis to determine whether the potential benefits of disclosure outweigh the potential disadvantages. *Id.*

While the State regulation, AR 457, invoked by Defendants does not govern the assertion of privilege in a federal question case, the court is mindful of the State's interest in protecting private personnel or otherwise confidential information. *Pinder,* 2015 WL 540431, at *3.  The court is also cognizant of NDOC's concerns for the safety and security of its inmates, employees, and the public, and takes these interests into account in balancing the benefits versus the potential harms that would result from disclosure of Espinosa's requested information. *Id.*  The "balancing test" enunciated by *Kelly* (and followed by this district in *Carillo v. Las Vegas Met. Police Dept.,* 2:10-cv-02122-KJD-GWS, 2013 WL 592893 (D. Nev. Feb. 14, 2013) and followed in part in *Manley v. Zimmer, et al.,* 3:11-cv-00636-RCJ-WGC, 2013 WL 5592328 (D. Nev. Oct. 9,

2013)) requires a state defendant asserting confidentiality or privilege to follow a certain protocol. *Pinder,* 2015 WL 540431, at *3.

As a threshold matter, under the *Kelly* protocol, "the party asserting the privilege is required to submit a declaration or affidavit under oath and penalty of perjury from the head of the department that has control over the information." *Carrillo*, 2013 WL 592893, at *3. Such an affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, and (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Id.*

For inmate conditions of confinement cases brought pursuant to § 1983, the court requires the parties to follow the protocol for objecting or responding to discovery set forth in the Federal Rules of Civil Procedure. *Manley,* 2013 WL 5592328, at *15. That is to say, a defendant asserting the official information privilege in a § 1983 conditions of confinement case should be required to invoke the privilege in its responses to discovery, and serve with its responses a privilege log which adequately states the basis for invoking the privilege (in conformity with Rule 26(b)(5)(A)) so as to enable the requesting party to thereafter challenge the asserted privilege if he or she sees fit. *Id.* If the responding party finds it would be unduly burdensome to prepare and provide a privilege log to the plaintiff, the responding party may seek a protective order. *Id.; see* Fed. R. Civ. Pro. 26(b)(5) advisory committee comment. Likewise, if a privilege log is provided and the plaintiff determines it is not in conformity with Rule 26(b)(5), the inmate

11

plaintiff may seek appropriate relief through a motion to compel (after pursuing efforts to resolve the dispute informally). *Id.*

After making a meaningful effort to meet and confer to resolve the dispute, if the plaintiff determines the objection is inappropriate or should otherwise not be sustained, he or she may file a motion to compel. *Id.* Any motion to compel must demonstrate the relevance of the requested documents in accordance with Rule 26(b)(1). *Id.* In addition, the plaintiff should identify which of the plaintiff's interests would be harmed if the court ordered the information not be disclosed. *Id.* In an opposing brief, the party asserting the official information privilege has the burden of showing the information requested information is privileged. *Id.* As in *Kelly*, the opposing party should specifically address the disadvantages of disclosure so that the court may properly engage in a balancing of the potential benefits of disclosure against the disadvantages. *Id.* The court suggests this argument be supported by appropriate declarations establishing the government or privacy interests that would be harmed if the information is disclosed and why a carefully crafted protective order will not alleviate those concerns. *Id.* The plaintiff will then submit a reply brief, and once the matter is fully briefed and the court has had a chance to review all the parties' arguments, it will determine whether to order *in camera* review of the documents. *Id.*

Here, Espinosa's initial RFPD requested all documents associated with the grievance, including "outcomes, reports, investigative documents, findings, reports and documents from" the IG's office "regarding their investigation into allegations made within said grievance." (*Id.* at 9.) Defendants' response to Espinosa's RFPD objected to the request because it requested confidential information. (*See* ECF No. 99-4 at 6.) Specifically, Defendants' response raised the following objections: (1) all IG investigation reports are confidential and cannot be disseminated; (2) request calls for confidential information wherein the disclosure could compromise the safety and security of the prison; (3) request is irrelevant, disproportional to the needs of the case, and is not reasonably calculated to lead to the discovery or production of admissible evidence; (4)

1 Espinosa failed to stated how this request was relevant to his case; and, (5) request is
2 improper because Espinosa propounded the request on Defendants as a whole, but
3 failed to state which Defendant is to respond. (*Id.*)

4 Espinosa's meet and confer letter asserted that Defendants' objections regarding
5 confidentiality was a boilerplate objection with no proof of how it could compromise
6 safety and security and/or any actual events of compromise. (*See* ECF No. 97 at 10.)
7 Espinosa stated the grievance was investigated by the IG's office and could contain
8 discoverable documents or facts relevant to the prosecution of this case and he may
9 discover possible witnesses who may be able to testify in support of his claims. (*Id.*)
10 Defendants' response to the meet and confer letter stated the work of the IG's office is
11 "confidential and not discoverable", and if the IG's office did investigate "into an incident
12 pertaining to correctional staff, their personnel files investigative reports and outcomes
13 are protected by state law." (*See* ECF No. 99-2 at 3.)  Espinosa's motion to compel
14 argues Defendants "make boilerplate objections" and "provide no privilege log" as
15 required by Fed. R. Civ. P. 26(b)(5)(A). (*See* ECF No. 97 at 7, 10.)  Additionally,
16 Espinosa claims that at a time during or immediately after the IG's investigation,
17 Defendant Borino was terminated from NDOC's employment, which draws her
18 credentials into question and her termination could be related to the instant proceedings.
19 (*Id.* at 11.)

20 It appears the IG's report on Grievance #2006-30-62921 may relate to an
21 investigation into an incident involving correctional staff, namely Defendant Borino. (*See*
22 ECF No. 97 at 10-11.)  In this case, Defendants are essentially asserting the official
23 information privilege (without specifically naming the privilege). However, Defendants
24 failed to either serve with their response a privilege log that adequately states the basis
25 for invoking the privilege in conformity with Rule 26(b)(5)(A), or to seek a protective order
26 from the court. *Manley,* 2013 WL 5592328, at *15.  Defendants merely claim privilege
27 pursuant to state law (administrative regulation) without providing further evidence as to
28 the harm of disclosure through declarations, affidavits or protective order. *Id.*

Accordingly, the court finds an *in camera* review of the documents is necessary to determine whether the requested IG's reports are relevant to Espinosa's claims. *Id.* Therefore, Defendants are ordered to submit the full IG report to the court within 14 days of this order for an *in camera* review.

D.   Documents and Information Setting Forth Psychological Standards

Espinosa requests "[a]ll documents and information which sets forth the substantial standards and criteria used within the psychological community concerning" depression, malingering, and suicidal ideation/attempt. (*See* ECF No. 97 at 11-13.) Defendants' opposition properly objected to Espinosa's request as exceeding the scope of discovery, is not information within the care, custody, or control of the Defendants, is not proportional to the case needs, and is overbroad and vague. (*See* ECF No. 99 at 4-5.) Therefore, the court denies Espinosa's motion to compel such documents.

**IV.   CONCLUSION**

**IT IS THEREFORE ORDERED** that Espinosa's motion to compel production of discovery (ECF No. 97) is granted, in part, and denied, in part, consistent with this order. Defendants will be required to supplement discovery responses for which the motion was granted no later than thirty (30) days from the date of this order.

DATE: April 17, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

14